IN THE

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

NO. 21-14425
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

Versus

AARON GREEN, Jr.,

Defendant-Appellant.
_____

A DIRECT APPEAL OF A CRIMINAL CONVICTION
FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA, VALDOSTA DIVISION
_____

INITIAL BRIEF

> SYDNEY R. STRICKLAND
> Georgia Bar Number: 418591
> Strickland Webster, LLC
> 830 Glenwood Ave SE
> Suite 510-203
> Atlanta, GA 30316
> 404-590-7967
> Attorney for Appellant Green

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

  versus                                     APPEAL NO. 21-14425

AARON GREEN,

      Defendant - Appellant.
_____/


CERTIFICATE OF INTERESTED PARTIES AND CORPORATE

DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. Rule 26.1-1, counsel for

certifies that the following listed attorneys, persons, associations of persons,

firms, partnerships, or corporations may have an interest in the outcome of

this appeal:

      Edwards, John Gee – Former counsel for Defendant/Appellant;

      Green, Jr., Aaron – Defendant/Appellant;

      Greenberg, Richard A. – Former counsel for Defendant/Appellant;

      Hunt, Christina L. - Former counsel for Defendant/Appellant;

      Langstaff, Thomas Q – United States Magistrate Judge;

Lawson, Hugh – United States District Judge;

Leary, Peter D. – United States Attorney, Middle District of Georgia;

Profit, Sonja B. – Assistant United States Attorney;

Register, Oliver R. - Former counsel for Defendant/Appellant;

Schieber, Michelle – Assistant United States Attorney;

Strickland, Sydney – Counsel for Defendant/ Appellant.

No publicly-traded company or corporation has an interest in the outcome of this appeal or case.

Dated: this 10th day of February, 2023.

/s/ Sydney R. Strickland
Sydney R. Strickland
Georgia Bar No. 418591
Attorney for Appellant Green

STRICKLAND WEBSTER, LLC
830 Glenwood Ave SE
Suite 510-203
Atlanta, GA 30316
Telephone: (404) 590-7967
Facsimile:  (404) 393-3617
sydney@stricklandwebster.com

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 34(a), F.R.A.P., the Defendant-Appellant requests oral argument because it would significantly aid in the decisional process.

## STATEMENT OF TYPE SIZE AND STYLE

Pursuant to 11th Cir. R. 28-2 (d), counsel for Appellant hereby certifies

that the size and style of type used in this brief is Book Antiqua 14 PT.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE
DISCLOSURE STATEMENT ............................................................................CI-1

STATEMENT REGARDING ORAL ARGUMENT ...........................................i

STATEMENT OF TYPE SIZE AND STYLE ........................................................ii

TABLE OF AUTHORITIES ....................................................................................iv

STATEMENT OF JURISDICTION ......................................................................vii

STATEMENT OF THE ISSUES ............................................................................ 1

STATEMENT OF THE CASE .................................................................................. 2

   I.   Course of Proceedings ............................................................................. 2

   II.  Statement of the Facts ............................................................................. 2

STANDARDS OF REVIEW .................................................................................... 21

SUMMARY OF THE ARGUMENT .................................................................... 22

ARGUMENT AND CITATIONS OF AUTHORITY ...................................... 24

   I.   The district court erred in denying Mr. Green's motion to suppress
   the evidence from his unconstitutional warrantless arrest........................ 24

   II.  Mr. Green's constitutional right to present a defense was violated
   when the district court prohibited him from presenting a justification
   defense. ...................................................................................................... 28

   III.   The district court imposed a procedurally unreasonable sentence
   because none of the three enhancements were supported by reliable
   evidence or findings of fact. .......................................................................... 33

   IV.   The district court procedurally erred by imposing the enhancement
   for obstruction pursuant to U.S.S.G. § 3C1.1 because the alleged
   obstruction was of relevant conduct and not "the instant offense." ........ 44

CONCLUSION .................................................................................................... 46

CERTIFICATE OF COMPLIANCE .................................................................. 47

CERTIFICATE OF SERVICE ............................................................................. 48

# TABLE OF AUTHORITIES

## SUPREME COURT CASES

*Arizona v. Gant*, 556 U.S. 332, 338 (2009)............................................................. 25

*Beck v. Ohio*, 379 U.S. 89, 91 (1964) ............................................................... 24, 27

*Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)....................................... 28, 33

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986)......................................................... 29

*Gall v. United States*, 552 U.S. 38, 51 (2007) ................................................. 21, 33

*Rehaif v. United States*, 139 S.Ct. 2191, 2192 (2019) .......................................... 29

*Washington v. Texas*, 388 U.S. 14, 19 (1967)................................................. passim

## CIRCUIT COURT CASES

*Rankin v. Evans*, 133 F.3d 1425 (11th Cir. 1998)................................................... 24

*United States v. Alzate*, 47 F.3d 1103 (11th Cir. 1995) ........................................ 32

*United States v. Anderton*, 136 F.3d 747 (11th Cir. 1998) ....................... 37, 39, 40

*United States v. Bagwell*, 30 F.3d 1454  (11th Cir. 1994)..................................... 45

*United States v. Barner*, 572 F.3d 1239 (11th Cir. 2009)...................................... 41

*United States v. Burgest*, 519 F.3d 1307 (11th Cir. 2008) .................................... 27

*United States v. Canty*, 570 F.3d 1251 (11th Cir. 2009)................................. 43, 44

*United States v. Daniels*, 685 F.3d 1237 (11th Cir. 2012) .................................... 41

*United States v. Deleveaux*, 205 F.3d 1292 (11th Cir. 2000) .................... 3, 29, 31

*United States v. Doe*, 661 F.3d 550, 556 (11th Cir. 2011) .................................. 21

*United States v. Johnson*, 694 F.3d 1192 (11th Cir. 2012) ......................33, 35, 41

*United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006) .................................... 42

*United States v. Kottwitz*, 627 F.3d 1383 (11th Cir. 2010).................................. 32

U*nited States v. Matthews*, 874 F.3d 698 (11th Cir. 2017)........................... 42, 46

*United States v. Montgomery*, 772 F.2d 733 (11th Cir. 1985) ............................ 28

*United States v. Paolello*, 951 F.2d 537 (3rd Cir.1991)...................................... 31

U*nited States v. Plasencia*, 886 F.3d 1336 (11th Cir. 2018)......................... 21, 24

*United States v. Thompson*, 25 F.3d 1558 (11th Cir. 1994) .......................... 21, 28

*United States v. Vereen*, 920 F.3d 1300  (11th Cir. 2019) ............................ 30, 31

*United States v. Videa*, 754 F. App'x 872 (11th Cir. 2018)..............37, 38, 39, 40

*United States v. Washingto*n, 714 F.3d 1358 (11th Cir. 2013) .......................... 34

*United States v. White*, 335 F.3d 1314 (11th Cir. 2003) ..................................... 24

*United States v. Williams*, 728 F.2d 1402 (11th Cir.1984) ................................. 28

*United States v. Wrigh*t, 862 F.3d 1265 (11th Cir. 2017) ................................... 43

## STATUTES

18 U.S.C. § 922(g)(1) ..................................................................................... 2, 29

18 U.S.C. § 922(j) ................................................................................................ 2

28 U.S.C. § 1291...............................................................................................vii

## RULES

11th Cir. R. 28-2 (d) ................................................................. ii

11th Cir. Rule 26.1-1 ............................................................... 1

Fed. R. App. P. 26.1 ............................................................... 1

Fed.R.App.P. 32(a)(7)(B)(iii) ............................................. 48

Fed.R.Evid. 801(c) ................................................................. 37

Federal Rule of Appellate Procedure 4 ............................ vii

Rule 34(a), F.R.A.P ................................................................. i

## SENTENCING GUIDELINES

U.S.S.G. § 2K2.1 ........................................................ passim

U.S.S.G. § 3C1.1 ........................................................ passim

## STATEMENT OF JURISDICTION

The Eleventh Circuit Court of Appeals has jurisdiction to consider this case pursuant to 28 U.S.C. § 1291 and Federal Rule of Appellate Procedure 4. This case involves a direct appeal of a criminal conviction and sentence imposed in the United States District Court for the Middle District of Georgia, Valdosta Division.

## STATEMENT OF THE ISSUES

I.      The district court erred in denying Mr. Green's motion to suppress the evidence from his unconstitutional warrantless arrest.

II.     Mr. Green's constitutional right to present a defense was violated when the district court prohibited him from presenting a justification defense.

III.    The district court imposed a procedurally unreasonable sentence because none of the three enhancements were supported by reliable evidence or findings of fact.

IV.     The district court procedurally erred by imposing the enhancement for obstruction pursuant to U.S.S.G. § 3C1.1 because the alleged obstruction was of relevant conduct and not "the instant offense."

## STATEMENT OF THE CASE

## I.    Course of Proceedings

In September 2018, Mr. Green was indicted for one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). (Doc. 1).  In August of 2019, a superseding indictment was filed, charging him only with possession of a firearm by a convicted felon.  (Doc. 26).  He proceeded to trial *pro se*, and was convicted of the sole count in the indictment. (Docs. 117, 244).  Mr. Green was sentenced to the statutory maximum of 120 months. (Doc. 285).  He timely filed a notice of appeal (Doc. 275). This Court appointed undersigned counsel to represent Mr. Green on appeal.

## II.    Statement of the Facts

In August of 2019, Mr. Green was charged by superseding indictment with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Doc. 26).   In December of 2019, Mr. Green filed through counsel a "notice of intent to raise issue of self defense."  (Doc. 51). In that document, Mr. Green gave "notice of his intent to raise the defense of justification or self-defense at trial," citing *United States v. Deleveaux*, 205 F.3d

1292 (11th Cir. 2000). (*Id.* at 1). The government did not file a response to the notice. (*See generally* Dist. Ct. Dkt.). At the same time, Mr. Green filed a motion to suppress all evidence obtained as a result of the stop, seizure, and search of his person. (Doc. 49).

Counsel later filed a motion to withdraw, and the court granted that motion and appointed Oliver Register to represent Mr. Green. (Docs. 77, 85, 86). Mr. Register filed a motion to withdraw in May of 2020. (Doc. 108). Subsequently, Mr. Green submitted a letter to the court stating that he wished to proceed *pro se*. (Doc. 114). On July 16, 2020, the court held an *ex parte* hearing on the matter. (Doc. 322 (sealed)). Mr. Green confirmed that he wished to dismiss his counsel and represent himself. (*Id.* at 14). Mr. Green requested that "co-counsel" be appointed to assist him with filing and legal research, and the court explained that Mr. Green could not have co-counsel per se, but standby counsel could be appointed. (*Id.* at 14-16, 19-20). The court explained to Mr. Green that he had the right to appointed counsel, questioned Mr. Green about his legal experience and his understanding of the charges against him, and explained the dangers of proceeding *pro se*. (*Id.* at 17-18, 20-22, 24-26, 28-31). Mr. Green indicated that he understood, and stated that he still wished to represent himself. (*Id.* at 31-32). The court found

that Mr. Green freely and voluntarily waived his right to counsel, and allowed him to proceed *pro se*. (*Id.* at 37-38; doc. 117).

A hearing was held on Mr. Green's pretrial motions in December of 2020. (Doc. 206). The court heard evidence on Mr. Green's motion to suppress his statements, but continued the hearing on the motion to suppress the evidence from the warrantless search and seizure of his person so that he and the government could produce witnesses. (*Id.* at 143-44).

    i.   <u>Suppression Hearing</u>

The suppression hearing was held a few weeks later. (Doc. 203). The government called David O'Steen of the Lowndes County Sheriff's Department (*Id.* at 19). O'Steen was familiar with Mr. Green from prior interactions. (*Id.* at 20). At around 4:30 a.m. on April 29, 2018, two officers from the Sheriff's Department responded to a call indicating that shots had been fired near Green's home. (*Id.* at 22).[1] Then, at around 5:30 a.m., others from the Sheriff's Department were dispatched to South Medical Center "in

---

[1] O'Steen later testified that the 911 callers stated that Mr. Green was the shooter, not just that the shots were fired at his home. (*Id.* at 36). However, after receiving the 911 calls at issue, Mr. Green filed a document alerting the court to the fact that the callers never stated that he was the shooter. (Docs. 196, 207). The court's order denying the suppression motion acknowledges those filings and finds only that the 911 calls indicated that the shots were fired at Mr. Green's address. (Doc. 212 at 10-11). Accordingly, it appears that the court did not credit O'Steen's testimony that Mr. Green was identified as the shooter by the 911 callers.

reference to a shooting that happened in the county." (*Id.* at 23-24). O'Steen testified that there were no other calls about shots being fired from anywhere else "in [his] zone." (*Id.* at 36). Based on an interview at the hospital, O'Steen was advised to go to Mr. Green's residence because "he was supposed to have been the shooter." (*Id.* at 24).[2]

O'Steen went to Mr. Green's home with several other officers. (*Id.* at 24). They found shell casings on the ground outside of the house. (*Id.* at 25). Mr. Green's wife was contacted and she advised that he was not there. (*Id.*). While at Mr. Green's house, at around 7:09 a.m., they got another call indicating that there was a black male asleep outside of a church less than a mile away. (*Id.* at 25, 38). O'Steen responded to Bemiss Road United Methodist Church with three other officers and the Sheriff. (*Id.* at 26-27). O'Steen recognized the person on the ground as Mr. Green. (*Id.* at 27). They gave Mr. Green verbal commands to show his hands, and when Mr. Green failed to respond, he was tased. (*Id.*). O'Steen explained that Mr. Green was tased because he failed to comply with verbal commands and for officer

---

[2] The district court did not use this testimony as part of its probable cause analysis, presumably because it was unclear whether this identification was the result of a lineup that Mr. Green challenged as unduly suggestive. (*See* doc. 212 at 10-11).

safety, as they suspected he had shot someone at his home earlier. (*Id.* at 27-28).

The government admitted body camera footage of the incident. (*Id.* at 29; Gov. Exh. 1).  O'Steen testified that they were concerned about officer safety because Mr. Green was not showing his hands when commanded to, and they believed he had a weapon based on the 911 calls stating shots were fired at his home. (Doc. 203 at 31).  Mr. Green was laying down and part of his body was covered by a shirt that was laid across his upper body. (*Id.* at 32; Gov. Exh. 1). At one point, an officer identified something shiny by Mr. Green's bookbag, and they believed the object was a gun. (Doc. 203 at 31). After Mr. Green was tased, he was handcuffed and officers found a gun in his waistband and a knife in a sheath on his side. (*Id.* at 32-33).

Mr. Green called Deputy James Holcomb of the Lowndes County Sheriff's Department. (*Id.* at 62).  Holcomb had not interacted with Mr. Green prior to his arrest on April 29, 2018. (*Id.* at 65).  Mr. Green attempted to question Holcomb on how the officers came to the conclusion that he was consciously ignoring commands, as opposed to being unconscious or asleep and thus unable to comply.  (*Id.* at 66-69). Holcomb agreed that it was possible Mr. Green was asleep, though the officers did not believe that he

was. (*Id.* at 69).  Mr. Green asked several other questions related to whether he was actually asleep at the church and wakened by the tasing. (*Id.* at 69-78, 86-88, 90-91).

The court denied the motion to suppress. (Doc. 212 at 9-15).  The court found that there was probable cause to arrest Mr. Green based on the officers' collective knowledge at the time. (*Id.* at 9-11).  Specifically, the court found that the following circumstances presented a fair probability that Mr. Green had recently committed an aggravated assault: (1) officers learned from dispatch that gunshots were heard at Mr. Green's residence; (2) a shooting victim had been admitted to a nearby hospital; (3) shell casings were found on Mr. Green's lawn; (4) upon arriving to the call to the church, O'Steen recognized Mr. Green; (5) Mr. Green's face and hands were obscured from view; and (6) an officer saw a shiny object that O'Steen believed could be a gun. (*Id.* at 10-11).  The court found that this information was sufficient for a prudent officer "to believe that Mr. Green had committed a violent felony offense with a deadly weapon, *i.e.*, aggravated assault. (*Id.* at 11). Because probable cause supported the arrest, the search incident to arrest did not violate Mr. Green's constitutional rights. (*Id.*).

ii.    <u>Pretrial Conference</u>

Prior to trial, Mr. Green filed several motions for subpoenas. (Docs. 234, 236, 238).    Mr. Green wanted to subpoena numerous witnesses, including the alleged victim of the aggravated assault at his home, the victim's wife, and Mr. Green's own wife. (Doc. 234). He also sought video evidence of the victim being taken into the emergency room and of the interview of Mr. Green's wife at their home. (Doc. 236 at 1-2). He stated that the witnesses and evidence were necessary for his defense. (*Id.* at 3).  Mr. Green also filed requests to charge, asking the court to give jury instructions on justification and innocent possession. (Doc. 231).

On June 11, 2021, just three days before the pretrial conference and four days before the trial was set to begin, the government filed a motion in limine asking the court to "enter an order preventing Defendant from asserting a justification defense and arguing to the jury that he should not be found guilty because he possessed a firearm for his protection." (Doc. 239).  The government acknowledged that justification can be a defense to possession of a firearm by a convicted felon, but asserted that that Mr. Green could not present the defense because there was no threat or immediate emergency when he was found with the weapon outside the church. (*Id.* at 1-5).

8

At the pretrial conference, the government asserted that there was a pending aggravated assault case in state court based on the shooting at Mr. Green's residence. (Doc. 292 at 4-5). But because the government had not charged him with aggravated assault in the instant case, what happened at the residence was not relevant to the case before the court. (*Id.*). The government argued that Mr. Green was not under an unlawful, present, imminent, and impending threat of death or serious injury when he was arrested at the church, and "him making that improper argument would only confuse the jury and bring in a case that's not before this Court." (*Id.* at 5).

The court asked Mr. Green to respond, and he explained that he had shot the man at his house in self-defense, and "the facts and the circumstances that was going on in my life is my only defense in why I was in possession of this firearm." (*Id.* at 6). He maintained that the victim's statement that Mr. Green had shot him because he wouldn't let their dogs fight was not true, and really there was "some type of plot going on against" his life. (*Id.* at 7). Mr. Green indicated that it was unfair to focus the trial only on what happened at the church, especially where the 911 calls in the discovery showed that the pastor who called indicated that he was unable

9

to wake Mr. Green up. (*Id.* at 7-8). He stated that he believed he "had been given some type of sleeping agent or administered some type of drug through drink or something," and that is why he was unconscious at the church (*Id.* at 8). He argued that the facts and circumstances leading up to him being at the church were "very relevant in this trial," and that if he was deprived the opportunity to present a justification defense, he had "no case." (*Id.* at 8).

The court told Mr. Green that the case before the court had "nothing at all to do with what happened at your house at some time prior to you being discovered" at the church. (*Id.* at 8). The court stated that Mr. Green was being charged with being a felon in possession of a firearm when he was discovered on the church lawn, "[n]ot 15 minutes before that. Not two hours before that." (*Id.* at 9). Mr. Green stated that he had "pictures that support that this person that I shot just had touched me on the back of my neck." (*Id.* at 10). He explained that after the shooting, he went to the church and passed out, so "the time between is really not actuality (sic)." (*Id.* at 10). He said he "was prevented from actually turning myself into the police or actually contacting the authorities . . . due to the fact that I had been drugged or I passed out." (*Id.* at 10). He argued that the video of him at the church

10

supported his contention that he was unconscious when the police found him. (*Id.* at 11). Finally, he noted that he notified the government of his intent to present a justification defense over one year prior, and the government waited until the eve of trial to file their motion to preclude the defense.  (*Id.* at 11-12).

The court stated that Mr. Green did not have a proper affirmative defense because it "center[ed] around incidents which took place two or two-and-a-half hours prior to" him being discovered at the church. (*Id.*). Consequently, the court granted the government's motion. (*Id.* at 12).  The court then noted that Mr. Green had not indicated in his request for subpoenas why those witnesses were necessary to his defense, and asked whether they were related to the justification defense. (*Id.* at 13). Mr. Green responded that most were. (*Id.* at 13).  The court then asked Mr. Green only about the ones that were not related to justification. (*Id.*).  Mr. Green then stated that he had no witnesses if he could not present a justification defense, and the court did not address the issue any further. (*Id.* at 13).

iii.   <u>Trial</u>

At trial, the government first called Officer Danielle Paskins of the Department of Community Supervision. (Doc. 290 at 21).   She had

11

previously supervised Mr. Green for an aggravated assault conviction for which he was sentenced to three years of probation. (*Id.* at 34-35). The government admitted certified copies of the disposition in that case, as well as certified copies of his felony convictions for terroristic threats and sale of cocaine. (*Id.* at 35-37).

Pastor Robert Ellis testified that he found someone lying the grass in front of Bemiss United Methodist church on the morning of Sunday April 29, 2018. (*Id.* at 40-41). He called to the person but the person did not respond. (*Id.* at 42). He approached and saw that the person was breathing, and again spoke to him, but got no response. (*Id.*). Pastor Ellis nudged the person with his foot, but still got no response. (*Id.*). He then called 911 because he thought the person needed help. (*Id.*). He stayed with the man until law enforcement arrived. (*Id.* at 45).

Deputy James Holcomb testified that he responded to the call to the church, and another unit was already at the scene when he arrived. (*Id.* at 49-50, 54). An officer was calling Mr. Green by name, but he wasn't responding to commands. (*Id.* at 54-55). Mr. Green was laying down and had a button-up shirt laid over his body such that they could not see his upper torso or his hands. (*Id.* at 54). After Mr. Green did not respond to

commands to show his hands, Deputy Holcomb first stated to Mr. Green that he would tase him if he did not comply, then did so. (*Id.* at 56). Upon being tased, Mr. Green jumped and then started complying with their commands. (*Id.* at 56-57). Another officer approached and handcuffed Mr. Green. (*Id.* at 57). As the officer was handcuffing him, Deputy Holcomb saw a knife and then a gun. (*Id.* at 57). Other officers secured Mr. Green and took the weapons away. (*Id.*).

Deputy O'Steen testified that he was the second officer to arrive at the church. (*Id.* at 71, 73). He recognized Mr. Green from previous encounters, and gave him commands to show his hands. (*Id.* at 74). The officers gave verbal commands for several minutes, and finally tased Mr. Green when he did not comply. (*Id.* at 75).

Next, ATF special agent Brian Queener testified as firearms interstate nexus expert. (*Id.* at 84, 87). He testified that the gun found on Mr. Green was a working firearm that had been manufactured in Ohio. (*Id.* at 88-89).

Finally, Investigator Stryde Jones testified that he conducted two interviews with Mr. Green, once on the day of his arrest and one on May 10, 2018. (*Id.* at 93, 95-96). Mr. Green was given *Miranda* warnings on both occasions. (*Id.* at 94-95). On the day of the arrest, Mr. Green did not make

any admissions, but during the second interview, he told Jones that he was in possession of the gun when he was arrested at the church and it was "the same firearm he had previously." (*Id.* at 96).

The government rested after Jones' testimony. (*Id.* at 106). The next day, Mr. Green moved for a mistrial, arguing that the government's motion to prohibit him from presenting a justification defense was untimely. (Doc. 291 at 2). He explained that he had received the government's motion on the day of the pretrial conference—which was the day before trial started—and that it was a "manifest injustice" to allow the government to file the motion that late when he had filed a notice of the defense over a year before that. (*Id.* at 3-4). Mr. Green asserted that he was prepared to present a justification defense and he did not have an opportunity to prepare any other defense. (*Id.* at 4-6). In response, the court chastised Mr. Green about his decision to represent himself, and denied the motion for mistrial. (*Id.* at 123-125).

Mr. Green presented no evidence. He was convicted of the sole count in the indictment. (*Id.* at 165; doc. 244).

iv.   <u>Sentencing</u>

The probation officer prepared a Presentence Investigator Report, ("PSR"). In the "offense conduct section," the PSR stated that, on April 29,

2018, Lowndes County, Georgia 911 received several calls reporting the sound of gunshots coming from 4016 Sandy Run Drive, Mr. Green's home. (PSR at ¶ 5).  A short time later, authorities received a call from South Georgia Medical Center in Valdosta reporting the arrival of a gunshot victim. (*Id.*). Law enforcement responded and met with Robin Grobey, who advised that her boyfriend, David Olson, had been shot by Mr. Green. (*Id.* At ¶ 6).  Grobey said that she and Olson were homeless and living in their vehicle with their dog. (*Id.*). They met Mr. Green and his wife at a local Waffle House on April 27, 2018. (*Id.*).  Mr. Green asked them to go back to their home, where they could park and sleep in the driveway. (*Id.*). They declined, but the next day they saw the Greens again and accepted the invitation. (*Id.*)  At the Green residence, Mr. Green became agitated after Olson refused to allow his dog to fight with Mr. Green's dogs. (*Id.*). They argued, and Mr. Green pulled out a gun and shot Olson. (*Id.*).  Mr. Green then told Grobey not to tell anyone, and to get Olson off his property before he did something bad to her as well. (*Id.* at ¶ 7).

The PSR then recounted the events that occurred at the church. (*Id.* at 10-12).  The PSR added that a firearms trace was conducted, and officers discovered that the weapon found on Mr. Green was reported stolen on June

6, 2018. (*Id.* at 12).  A statement was filed by the owner of the firearm stating that the gun had actually been stolen from his car almost a year earlier, between June 1, 2017 and August 1, 2017.  (*Id.* at ¶ 12).

The PSR calculated the guideline range as follows. The base offense level was 20, pursuant to U.S.S.G. § 2K2.1, because Mr. Green had a previous felony conviction for a controlled substance offense. (*Id.* at 18).[3]  Two points were added because the firearm was stolen, pursuant to § 2K2.1(b)(4). (*Id.* at ¶ 19). Four points were added for using the firearm in connection to another felony offense, pursuant to § 2K2.1(b)(6)(b). (*Id.* at ¶ 20). Finally, two points were added for obstruction of justice, pursuant to § 3C1.1, because Mr. Green purportedly threatened Grobey. (*Id.* at ¶ 22).  Mr. Green had a criminal category of VI. (*Id.* at 43).  The criminal history category of VI and the total offense level of 28 yielded a guideline range of 140 to 175 months. (*Id.* at ¶ 65).  However, because the maximum sentence was 120 months, his guideline range became 120 months. (*Id.*).

Mr. Green filed numerous objections to the PSR. (Doc. 260).  Relevant here, he objected to "the alleged events of the PSI writer in the Offense

---

[3] The initial PSR listed the base offense level as 24, pursuant to U.S.S.G. § 2K2.1(a)(2), but this was corrected before sentencing.

Conduct in the PSI[,] as the account written is not a correct representation of the truth of what really occurred on April 29, 2018." (*Id.* at 3). Mr. Green objected to the allegation that he shot Olson because he refused to let his dog fight, maintaining that he "shot Mr. Olson in self defense." (*Id.* at 7). He specifically objected to the conclusion that he obstructed justice, noting that the PSR used "allegations of a questionable witness" and that the "account has not been proven to be true." (*Id.* at 3, 5, 7). Mr. Green lodged an overall objection that the PSR relied on "unproven allegations," and requested that the court "conduct its fact[-]finding obligation" and not "accept the reported allegations as true." (*Id.* at 7). Mr. Green submitted that his correct adjusted offense level was 18. (*Id.* at 5).

At the sentencing hearing, Mr. Green noted that he had filed objections to the PSR, and the court asked him to explain his objections. (Doc. 293 at 5). Mr. Green first stated his objections to the facts involved "a legal matter that had not been adjudicated," and submitted that the court could not "assume" guilt in those matters. (*Id.* at 6). He stated that that allegations in the PSR were "rumors" and "lies" that "do not represent the truth of what really occurred on 4/29/2018 and is unrelated to the instant offense." (*Id.* at 7). The government responded that the that the aggravated assault of Olson

could be considered as relevant conduct. (*Id.* at 7-8). The court then overruled Mr. Green's objection. (*Id.* at 8).

Mr. Green then objected to the factual findings supporting the two-point enhancement for obstruction of justice, arguing, *inter ala*, that "all these facts about an aggravated assault . . . that I have not been convicted of . . it's having, um, substantial impact on upon my sentencing." (*Id.* at 8-10). Mr. Green also objected to the enhancement on the basis that he could not have obstructed a federal investigation that he did not know about. (*Id.* at 8-14). The government responded that the conduct obstructed the investigation of relevant conduct, the aggravated assault. (*Id.* at 14-15). The government simply asserted that Mr. Green was given in discovery "body-worn camera footage of the witness's interview with the police, and it's very explicit that the defendant did, indeed, threaten her." (*Id.* at 15). Mr. Green asked to "add one thing," but the court did not allow him to, and overruled his objection. (*Id.* at 15).

Next, Mr. Green objected to the enhancement for the stolen firearm, noting that he was not convicted of such an offense, and the police report regarding the gun was not filed until after the incident. (*Id.* at 15-16). The government stated that "the owner of the weapon – Michael Ganas, I believe

is his name, I have the report—'Kenneth Micheal Ganas' relayed in this report that the gun was stolen more than one year prior to the incident." (*Id.* at 17). The government did not admit the report into evidence, or even show it to Mr. Green or the court. (*Id.*). Instead, the government asserted that the report was "supplied in discovery" and thus it was "well proven" that the gun was stolen. (*Id.* at 17). The court overruled the objection. (*Id.*).

Mr. Green objected specifically to the four-point enhancement for possessing the gun in connection with the alleged aggravated assault, asserting that the event should not be considered relevant conduct if the court prohibited him from bringing up the incident at trial. (*Id.* at 18-22). He further asserted that the enhancement was "based upon facts and allegations that have not been proven in a court of law." (*Id.* at 22). Mr. Green asserted that the court should not consider "unproven facts and unproven allegations." (*Id.* at 23). The government responded that Mr. Green was simply "unhappy with the application of the guidelines as they are set forth today," and stated that "the defendant was charged with aggravated assault, amongst other charges, by Lowndes County Superior Court." (*Id.* at 25). The court overruled the objection. (*Id.*).

The court then asked if there was anything the government wanted to say before sentence was imposed. (*Id.* at 42). The government argued that Mr. Green should receive a sentence of 120 months in part because his conduct in the alleged aggravated assault was part of a pattern of violence. (*Id.* at 43-46). After hearing argument from Mr. Green, the court found that his offense level was 28 and his criminal history was VI, yielding a guideline of 120 months, the statutory maximum. (*Id.* at 51). The court sentenced Mr. Green to the statutory maximum of 120 months. (*Id.* at 51). Mr. Green objected that the sentence was based on erroneous enhancements. (*Id.* at 52-53). This appeal followed.

<u>STANDARDS OF REVIEW</u>

When considering a district court's ruling on a motion to suppress, this Court reviews factual findings for clear error and application of law to the facts *de novo*. *United States v. Plasencia*, 886 F.3d 1336, 1342 (11th Cir. 2018).

This Court reviews *de novo* the decision of the district court to preclude an affirmative defense. *United States v. Thompson,* 25 F.3d 1558, 1563 (11th Cir. 1994).

This Court reviews the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). This Court reviews the district court's factual findings for clear error and . . . the application of the factual findings to the sentencing guidelines *de novo*. *United States v. Doe*, 661 F.3d 550, 556 (11th Cir. 2011).

## SUMMARY OF THE ARGUMENT

The district court erred in finding that the warrantless arrest and search of Mr. Green's person was supported by probable cause. There was not sufficient information pointing to Mr. Green as the person who fired shots outside his residence hours prior to his arrest, nor was there reason to believe that anyone had been harmed by those gunshots. As such, there were not facts and circumstances to warrant a prudent person in believing that Mr. Green had committed an aggravated assault at his home, which was the justification law enforcement and the district court gave for his arrest.

The district court violated Mr. Green's constitutional right to present a defense when it precluded him from presenting evidence or argument related to a justification defense. Mr. Green proffered sufficient facts to establish the defense; specifically, that he shot a person outside of his home in self-defense and then was unable to safely dispose of the gun or alert authorities before he was found unconscious at the church. The government did not move to preclude his justification defense until the eve of trial, leaving Mr. Green with no time to develop and alternative defense.

Finally, the district court procedurally erred in imposing the three sentencing enhancements based on the alleged aggravated assault,

obstruction of justice, and a stolen firearm.  Mr. Green objected to each enhancement and the factual basis in the PSR.  The government was thus required to submit evidence in support of the enhancements, but produced none at the sentencing hearing.  As such, the enhancements were not supported by any facts or factual findings.  Additionally, the enhancement for obstruction of justice was erroneous because the alleged obstructive conduct did not relate to the offense of conviction.

## ARGUMENT AND CITATIONS OF AUTHORITY

I.   The district court erred in denying Mr. Green's motion to suppress the evidence from his unconstitutional warrantless arrest.

When considering a district court's ruling on a motion to suppress, this Court reviews factual findings for clear error and application of law to the facts *de novo*. *United States v. Plasencia*, 886 F.3d 1336, 1342 (11th Cir. 2018). Clear error lies where the record leaves the Court "with the definite and firm conviction that a mistake has been committed." *United States v. White*, 335 F.3d 1314, 1319 (11th Cir. 2003) (internal quotation marks omitted).

A warrantless arrest is constitutional under the Fourth Amendment only when it is made with probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). In *Beck*, the Supreme Court described the probable-cause inquiry as follows: whether, at the time of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Id.* Probable cause exists when an arrest is "objectively reasonable under the totality of the circumstances." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). Warrantless searches may be valid where they are "incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

24

Here, the district court found that probable cause existed to arrest Mr. Green at the church based on the following: (1) officers learned from dispatch that gunshots were heard at Mr. Green's residence;[4] (2) a shooting victim had been admitted to a nearby hospital; (3) shell casings were found on Mr. Green's lawn; (4) upon arriving to the call to the church, O'Steen recognized Mr. Green; (5) Mr. Green's face and hands were obscured from view; and (6) an officer saw a shiny object that O'Steen believed could be a gun. (Doc. 212 at 10-11).   The court concluded that this was sufficient probable cause to arrest Mr. Green for aggravated assault. (*Id.* at 11).

Contrary to the district court's conclusion, this information was not sufficient to warrant a prudent man in believing that Mr. Green had committed an aggravated assault at his residence.   First, there was insufficient information pointing to Mr. Green as the shooter.   There were reports of gunshots outside the residence, but Mr. Green was not there when officers responded to the call.   Anyone could have been in the area outside

---

[4] As noted previously, O'Steen testified that the 911 callers stated that Mr. Green was the shooter, not just that the shots were fired at his home. (*Id*. at 36).   However, after receiving the 911 calls at issue, Mr. Green filed a document alerting the court to the fact that the callers never stated that he was the shooter. (Docs. 196, 207).   The court's order denying the suppression motion acknowledges those filings and finds only that the 911 calls indicated that the shots were fired at Mr. Green's address. (Doc. 212 at 10-11).   Accordingly, it appears that the court did not credit O'Steen's testimony that Mr. Green was identified as the shooter by the 911 callers.

Mr. Green's home. There was no testimony that he lived in remote or otherwise unoccupied area, and thus no reason to conclude that he must have fired the shots simply because they came from the area outside of his home. (*See generally* doc. 203).  Furthermore, Mr. Green's wife was at the home and could have fired the shots that were reported. (*Id.* at 25).

Moreover, there was no reason to believe that a person had actually been shot near Mr. Green's home.  While the district court found that a shooting victim had been admitted to a nearby hospital, there was no testimony from which to conclude that the hospital was actually near Mr. Green's home. (*See generally* doc. 203).  In fact, the testimony was that law enforcement did not receive the call from the hospital reporting a gunshot victim until almost an hour after the 911 calls.  (Doc. 203 at 23-24).  Because there are no facts supporting it, the court clearly erred in determining that the gunshot victim was reported at a hospital near Mr. Green's home.

Additionally, while O'Steen testified that there were no other calls of shots fired in his "zone," there was no testimony establishing the size of his zone or its proximity to the hospital. And because there was over an hour between the 911 calls and a shooting victim arriving at the hospital, there is

no basis to conclude that the person at the hospital was connected to the incident reported in the 911 calls.

Without that fact, the officers approaching Mr. Green at the church knew only who he was and that shots had been fired near his residence earlier that morning.  While there was also testimony that officers saw something shiny near Mr. Green that could have been a gun, without any reason to believe that he had shot someone with it, this additional fact does not amount to probable cause to arrest him for aggravated assault, which is the sole offense asserted by law enforcement and relied upon by the district court. Because there were not facts and circumstances sufficient to warrant a prudent man in believing that Mr. Green had committed the crime of aggravated assault, his arrest and the search incident to that arrest violated his Fourth Amendment rights. *See Beck*, 379 U.S. at 91.  As such, the evidence from that search, including the gun, should have been suppressed.

The trial court's error in denying the motion to suppress in this case was clearly harmful. *See, e.g., United States v. Burgest*, 519 F.3d 1307, 1311 (11th Cir. 2008) (applying harmless-beyond-a-reasonable-doubt standard to suppression issue).  The gun seized upon Mr. Green's arrest was the one he was charged with possessing as a convicted felon.  Without evidence of the

gun, the government could not prove its case. As such, Mr. Green's conviction must be vacated.

II. Mr. Green's constitutional right to present a defense was violated when the district court prohibited him from presenting a justification defense.

This Court reviews *de novo* the decision of the district court to preclude an affirmative defense. *United States v. Thompson,* 25 F.3d 1558, 1563 (11th Cir. 1994). Before an affirmative defense can go to the jury, the defendant must proffer enough facts to support each element of the defense. *United States v. Montgomery*, 772 F.2d 733, 736 (11th Cir. 1985). In deciding whether a defendant has met this burden, the court must view the evidence in the light most favorable to the accused. *See United States v. Williams,* 728 F.2d 1402, 1404 (11th Cir.1984) (addressing whether there was a proper foundation for a jury instruction on the defendant's theory of defense.).

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). Accordingly, "[t]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Criminal defendants have "the right to present the defendant's version of

the facts as well as the prosecution's to the jury so it may decide where the truth lies. . . This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967).

To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove beyond a reasonable doubt that: (1) the defendant was a convicted felon, (2) the defendant knew that he was a convicted felon; (3) the defendant was in knowing possession of a firearm, and (4) the firearm was in or affecting interstate commerce. *See Rehaif v. United States*, 139 S.Ct. 2191, 2192 (2019). In *United States v. Deleveaux*, 205 F.3d 1292 (11th Cir. 2000), this Court held that justification is an affirmative defense to a § 922(g) charge. 205 F.3d at 1297-98. To establish a justification defense, a defendant must show four elements:

> (1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury;
> (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct;
> (3) that the defendant had no reasonable legal alternative to violating the law; and
> (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Id.* For a defendant to avail himself of the defense, he must "rid himself of possession of the firearm as promptly as reasonably possible. " *United States v. Vereen*, 920 F.3d 1300, 1311 (11th Cir. 2019).

Here, Mr. Green proffered sufficient facts to support a justification defense, and therefore, the district court erred in precluding him from presenting any evidence in support of that defense. Viewed in the light most favorable to Mr. Green, his proffered defense was as follows. Olson, the alleged aggravated assault victim, was part of a plot against Mr. Green's life. (Doc. 292 at 7). Olson touched Mr. Green on the back of his neck, which made Mr. Green believe that he was being attacked, and fear for his life. (*Id.* at 10). Mr. Green then shot Olson in self defense. (*Id.* at 6, 10). Because his attacker was still alive and at the scene, along with his wife, Mr. Green was still in imminent danger, and fled with the gun. (*Id.* at 10). Mr. Green had been involuntarily drugged at some point, and so he passed out at the church and could not contact authorities or surrender the gun. (*Id.*). Mr. Green had previously proffered the fact that the pastor said on the 911 call that he was unable to wake Mr. Green on the church lawn. (Doc. 203 at 110-11). The court had also heard from the government that Olson was "very intoxicated and very uncooperative" at the hospital" and advised that "he wasn't sure

where he got shot." (*Id.* at 8-9). Olson's behavior lends credence to Mr. Green's assertion that Olson attacked him first.[5]

Thus, Mr. Green's proffer established all of the elements of the affirmative defense of justification. He was under an unlawful and imminent threat of death or serious bodily injury when Olson attacked him; he did nothing to provoke the attack or place himself in a situation to be attacked by Olson; he had no alternative but to protect himself; and there was a direct causal relationship between Olson's attack and Mr. Green's use of the gun. *Deleveaux*, 205 F.3d 1297-98. He could not reasonably rid himself of possession of the firearm because Olson was still there, and so he fled instead. *Vereen*, 920 F.3d at 1311 (defendant must rid himself of possession of the firearm "as promptly as *reasonably* possible"); *see also United States v. Paolello,* 951 F.2d 537, 541–43 (3rd Cir.1991) (justification defense allowed where, after knocking gun out of attacker's hand to protect third person, defendant picked gun up off ground and ran with it to prevent attacker from getting it). Because he had been drugged, Mr. Green could not reasonably or safely dispose of the firearm before he passed out in the church yard. Also,

---

[5] Notably, the district court prevented Mr. Green from articulating more specific facts when it refused to hear any argument on Mr. Green's requests for subpoenas for witnesses and evidence related to the justification defense. (Doc. 292 at 13).

because he was unconscious, he was not in knowing possession of the firearm after passing out.

Just as the burden is not high in order to receive a requested jury instruction, the burden is not high to admit relevant evidence that went to these factors. *See United States v. Kottwitz*, 627 F.3d 1383, 1384 (11th Cir. 2010) ("To receive a requested jury instruction in this Circuit, a defendant's burden is light: any foundation in the evidence is sufficient." (quotation omitted)). Even if the government and the district court think little of Mr. Green's proffered defense, he was entitled to present it. *See United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995) ("It may be that Alzate's duress defense does not amount to much, but he is entitled to put his defense forward free of the prosecutorial misconduct that occurred in this case."). Because Mr. Green's proffer was sufficient to meet his burden, the district court erred in precluding Mr. Green from presenting evidence of this defense.

The district court's error was especially egregious because Mr. Green filed a notice of intent to present this defense over a year before trial. (Doc. 51). Yet the government did not move to prohibit the defense until the eve of trial, giving Mr. Green no time to prepare any other defense. (Doc. 239). This deprived Mr. Green of "a fair opportunity to defend against" the

government's accusations, violating his due process rights. *See Chambers*, 410 U.S. at 294; *Washington*, 388 U.S. at 19 (criminal defendant's right to present his version of the facts is "a fundamental element of due process of law."). As such, Mr. Green's convictions must be vacated and he must be given the opportunity to present his justification defense in a new trial.

III.    <u>The district court imposed a procedurally unreasonable sentence because none of the three enhancements were supported by reliable evidence or findings of fact.</u>

This Court reviews the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). The Court first determines whether the sentence is procedurally unreasonable—that is, whether the district court committed any "significant procedural error, such as ... improperly calculating[ ] the Guidelines range, treating the Guidelines as mandatory, [or] failing to consider the [18 U.S.C.] § 3553(a) factors." *Id.*

Generally, failure to make findings of fact in support of an enhancement is a procedural error that requires resentencing. *See, e.g., United States v. Johnson*, 694 F.3d 1192, 1195, 1197 & n.21 (11th Cir. 2012). "When the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing sufficient and reliable evidence to prove the necessary facts by

a preponderance of the evidence." *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013) (quotation omitted). "[A]bsent a stipulation or agreement between the parties, an attorney's factual assertions at a sentencing hearing do not constitute evidence that a district court can rely on." *Id.*

Here, three sentencing enhancements were applied to Mr. Green's base offense level. Two were related to the alleged aggravated assault at Mr. Green's home: one four-point enhancement for using the firearm in connection to another felony offense, pursuant to U.S.S.G. § 2K2.1(b)(6)(b), and one two-point enhancement obstruction of justice, pursuant to § 3C1.1, based on an alleged threat to Grobey after the alleged aggravated assault. (PSR at ¶¶ 20, 22; Doc. 293 at 8, 15, 25, 51). The other two-point enhancement was based on the allegation that the firearm Mr. Green possessed was stolen. (PSR at ¶ 19; Doc. 293 at 17, 51).

Mr. Green objected, both in writing and orally, to each enhancement and their factual bases. (Doc. 260 at 3, 5, 7; Doc. 293 at 6-8, 8-10, 15-16, 18-23). He specifically asserted that the enhancements relied on "unproven allegations," and requested that the court "conduct its fact fact[-]finding obligation" and not "accept the reported allegations as true." (Doc. 260 at

7). Consequently, the government had "the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence." *Washington*, 714 F.3d at 1361. And the sentencing court had a corresponding obligation to make factual findings in support of each enhancement. *Johnson*, 694 F.3d at 1195, 1197 & n.21. Neither happened here, as detailed below, and therefore, Mr. Green's sentence must be vacated.

A. <u>There was neither evidence nor findings of fact supporting the enhancement for possessing the gun in connection with the alleged aggravated assault.</u>

U.S.S.G. § 2K2.1(b)(6)(B) provides a four-level enhancement to a defendant's base offense level if he "used or possessed any firearm or ammunition in connection with another felony offense." The term "another felony offense" includes crimes that are punishable by imprisonment for a term exceeding one year under federal, state, or local law, "regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* at cmt. n.14(C). Thus, in order to apply this enhancement, the district court was required to find by a preponderance of the evidence that another felony offense actually occurred.

In response to Mr. Green's objection to the § 2K2.1(b)(6)(b) enhancement and the factual basis—the alleged aggravated assault

described in paragraphs 5-7 of the PSR—the government first argued only that the alleged events were relevant conduct. (Doc. 293 at 7-8). When Mr. Green addressed this objection a second time, specifically arguing that the court should not consider "unproven facts and unproven allegations," the government still did not produce any evidence. (*Id.* at 22-25). Instead, the government simple proffered to the court that "the defendant was charged with aggravated assault, amongst other charges, by Lowndes County Superior Court." (*Id.* at 25). This was clearly insufficient to sustain the government's burden of proof.

First, the government did not admit any evidence to support even the assertion that Mr. Green had been indicted for aggravated assault in state court. Instead, the government merely proffered that he had been indicted. But "an attorney's factual assertions at a sentencing hearing do not constitute evidence that a district court can rely on." *Washington*, 714 F.3d at 1361. Additionally, because the indictment was not offered into evidence, Mr. Green had no opportunity to challenge it. *Id.*; *see also United States v. Videa*, 754 F. App'x 872, 878 (11th Cir. 2018) (unpublished) (rejecting the government's argument that an enhancement could be affirmed based on a transcript the government read from during sentencing because "it never

moved it into evidence and thus [the defendant] never had an opportunity to challenge it."). Thus, the government's proffer clearly cannot provide a basis for the enhancement.

Furthermore, even if the indictment had been admitted into evidence, the court still could not simply rely on it to find that Mr. Green committed an aggravated assault. The allegations in an indictment are hearsay, and the court made no findings as to the hearsay's reliability or the unknown declarant's credibility; nor could it do so, as there was no indication of who the declarant was. *See United States v. Anderton*, 136 F.3d 747, 751 (11th Cir. 1998) (a district court may rely on hearsay evidence only if "the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence."); Fed.R.Evid. 801(c).

Consequently, there was no evidence that the district court could rely on to sustain the application of the enhancement for the aggravated assault. Indeed, the court did not even make any factual findings in overruling Mr. Green's objections. The court never stated that it found that Mr. Green committed the alleged aggravated assault, nor did it ever adopt the facts as stated in the PSR. (*See generally* doc. 293); *see also Videa*, 754 F. App'x at 876

(noting that this Court could not rely on the facts set out in the PSR because the district court never adopted those facts). Therefore, the § 2K2.1(b)(6)(b) enhancement was not supported by any facts, and the sentencing court erred by applying the enhancement.

B. <u>There was neither evidence nor findings of fact supporting the enhancement for obstruction of justice.</u>

The sentencing court committed the same error in applying the enhancement pursuant to § 3C1.1 based on an alleged threat that Mr. Green made to Grobey after the unproven aggravated assault. Relevant here, U.S.S.G. § 3C1.1 provides that a two-point enhancement may be applied if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation" of the "instant offense of conviction." As such, the court was required to make a finding that, *inter alia*, Mr. Green actually engaged in "[o]bstructive conduct" in order to apply this enhancement. *See id.* cmt.n.4.

The government again failed to introduce any evidence supporting the enhancement, in spite of Mr. Green's clear objections to the facts stated in the PSR. Instead, the government merely asserted that it had provided in discovery "body-worn camera footage of the witness's interview with the police," and argued that "it's very explicit that the defendant did, indeed,

threaten her." (*Id.* at 15). This interview was not admitted into evidence. Thus, the court only received the government's factual assertions, which "do not constitute evidence that a district court can rely on." *Washington*, 714 F.3d at 1361. Moreover, Mr. Green argued that the declarant, Grobey, was not credible, (doc. 260 at 5 (calling Grobey a "questionable witness)), and the court made no findings as to the reliability or credibility of her assertion. *See Anderton*, 136 F.3d at 751. As such, there was no competent evidence the court could rely on in imposing this enhancement.

As with the previously-discussed enhancement, the court did not make any factual findings in overruling Mr. Green's objections, and it never adopted the facts as stated in the PSR. (*See generally* doc. 293); *see also Videa*, 754 F. App'x at 876. Therefore, the § 3C1.1 enhancement was not supported by any facts, and the sentencing court erred by applying the enhancement.

C. <u>There was neither evidence nor findings of fact supporting the enhancement for a stolen firearm.</u>

Finally, the court committed the same error with respect to the enhancement for a stolen firearm. U.S.S.G. § 2K2.1(b)(4)(A) provides that a two-point enhancement may be applied if any firearm was stolen. Obviously, the court was required to find that the firearm was stolen at the time that Mr. Green possessed it in order to apply the enhancement.

In response to Mr. Green's objection to this enhancement and the factual basis, the government again failed to produce any evidence at all. Instead, the government merely proffered that the owner of the firearm had reported that it was stolen. (Doc. 293 at 17). Again, the government did not admit the report into evidence, and only asserted that it had been "supplied in discovery." (*Id.*). And again, the government only relayed hearsay without any showing that the declaration was reliable or the declarant credible, leaving Mr. Green without the opportunity to challenge the assertion. *See Anderton*, 136 F.3d at 751. This proffer was clearly insufficient to sustain the government's burden. *Washington*, 714 F.3d at 1361.

As with the other enhancements, the court never made factual findings or adopt the facts from the PSR. (*See generally* doc. 293); *see also Videa*, 754 F. App'x at 876. Therefore, this enhancement was not supported by any facts, and the sentencing court erred by applying the enhancement.

D. This procedural error requires that Mr. Green be resentenced.

Generally, failure to make findings of fact in support of an enhancement is a procedural error that requires resentencing. *See, e.g., United States v. Johnson*, 694 F.3d 1192, 1195, 1197 & n.21 (11th Cir. 2012). The exception to this rule is that vacature is not required "if the record support

the court's determination." *United States v. Daniels*, 685 F.3d 1237, 1253 (11th Cir. 2012). Here, as discussed above, the court failed to make factual findings in support of the enhancements, and the record contains no evidence supporting the enhancements. Therefore, resentencing is required on this basis.

Additionally, the error in applying three different unsupported enhancements was not harmless, nor was the application of each individual enhancement harmless. "An error in the district court's calculation of the Sentencing Guidelines range warrants vacating the sentence, unless the error is harmless." *United States v. Barner*, 572 F.3d 1239, 1247–48 (11th Cir. 2009). A Sentencing Guidelines miscalculation is harmless if the district court would have imposed the same sentence without the error. *Id.*

Here, the district court never stated that it would have imposed the same sentence if the enhancements had not been applied; thus, the error is not harmless. *See United States v. Keene*, 470 F.3d 1347, 1348-49 (11th Cir. 2006). Furthermore, these enhancements took Mr. Green's total offense level from 20 to 28. With a criminal history category of VI, his guideline range was 120 months—the statutory maximum—and that is the sentence he received. With a total offense level of 20 instead of 28, his guideline range

would have been only 70-87 months.  Because there is no indication that the court would have imposed at 120-month sentence if the guidelines were any lower than that, much less 33 months lower on the high end, it cannot be said that the error was harmless. *See United States v. Matthews*, 874 F.3d 698, 710 (11th Cir. 2017) (finding that an error that reduced the total offense level by three levels was not harmless.). As such, Mr. Green's sentence must be vacated.

E. <u>The government should not have the opportunity to present evidence in support of these enhancements at the resentencing hearing.</u>

A remand for further findings may be inappropriate in cases where "the issue was before the [district] court and the parties had an opportunity to introduce relevant evidence." *United States v. Canty*, 570 F.3d 1251, 1257 (11th Cir. 2009) (precluding the government from presenting evidence on remand because the government had explicitly disclaimed reliance on certain evidence at the first sentencing hearing). However, this Court has allowed the government to present evidence at resentencing when a defendant made vague or unclear objections at the sentencing hearing. *See United States v. Wright*, 862 F.3d 1265, 1276 (11th Cir. 2017) (holding that both parties could submit new evidence on remand because the defendant had

made a general objection but did not articulate the specific evidentiary objection argued on appeal).

Here, the government should not be permitted to introduce evidence in support of these sentencing enhancements at a resentencing hearing because Mr. Green's specific objections to the facts in the PSR gave the government notice that it would be required to meet its burden of production in the initial sentencing hearing. As discussed above, Mr. Green's objections clearly stated multiple times that he objected to the facts stated in the offense conduct section of the PSR and to the individual enhancements. (Doc. 260 at 3, 5, 7). He specifically asserted that the enhancements relied on "unproven allegations," and requested that the court "conduct its fact fact[-]finding obligation" and not "accept the reported allegations as true." (Doc. 260 at 7). Consequently, the government was put on notice that it had "the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence." *Washington*, 714 F.3d at 1361.

The government had no reason for failing to do so at the hearing. Indeed, the government referenced the evidence it could have used, and even read from the police report regarding the allegedly stolen firearm

during the sentencing hearing. (Doc. 293 at 17). It is well established that the government could not merely proffer this evidence, and the government should not be excused for simply electing to do so anyway. Because "the issue was before the [district] court and the parties had an opportunity to introduce relevant evidence," at the initial sentencing, the government should be prohibited from doing so on remand. *United States v. Canty*, 570 F.3d at 1257.

IV.    The district court procedurally erred by imposing the enhancement for obstruction pursuant to U.S.S.G. § 3C1.1 because the alleged obstruction was of relevant conduct and not "the instant offense."

U.S.S.G. § 3C1.1 provides that a two-level enhancement is appropriate if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impeded, the administration of justice with respect to the investigation, prosecution, or sentencing *of the instant offense of conviction*, and
> (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense."

U.S.S.G. § 3C1.1 (emphasis added).

The PSR applied the § 3C1.1 enhancement based on Mr. Green's alleged threat to Grobey after the shooting. (PSR at ¶ 22). The government made clear at sentencing its position that the enhancement could be applied

based on obstruction of the investigation of relevant conduct, the alleged aggravated assault. (Doc. 293 at 14-15).  However, § 3C1.1 is clear that the enhancement applies to conduct that in some way obstructed or attempted to obstruct "the administration of justice with respect to the investigation, prosecution, or sentencing *of the instant offense of conviction*."  U.S.S.G. 3C1.1 (emphasis added).  Indeed, this Court has held that "the plain language of the relevant portion of [§ 3C1.1] requires that the obstruction conduct occur 'during the investigation . . . of the instant offense'—that is, the offense of conviction." *United States v. Bagwell*, 30 F.3d 1454, 1458 (11th Cir. 1994).  The Court noted that, "[t]o conclude otherwise would require either a tortured reading of § 3C1.1 or our ignoring it altogether." *Id.* at 1459.

Here, because the § 3C1.1 enhancement was not based on obstruction of the offense of conviction, the district court erred in applying it.  The error was not harmless because it added two points to Mr. Green's sentencing guidelines.  *See Matthews*, 874 F.3d at 710 (finding that an error that reduced the total offense level by three levels was not harmless.). As such, this Court should vacate Mr. Green's sentence and remand for resentencing without the § 3C1.1 enhancement.

CONCLUSION

For the reasons articulated above, this Court should vacate Mr. Green's

conviction and sentence.

Dated:  This 10th day of February, 2023.

Respectfully submitted,

*/s/ Sydney R. Strickland*
Sydney R. Strickland
Georgia Bar No. 418591
Attorney for Aaron Green


STRICKLAND WEBSTER, LLC
830 Glenwood Ave SE
Suite 510 #203
Atlanta, GA 30316
Telephone: (404) 590-7967
Facsimile:  (404) 393-3617
sydney@stricklandwebster.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief contains 10,331 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Brief was filed by uploading it with the Eleventh Circuit's Electronic Filing System which will automatically serve opposing counsel with the Brief.

Dated:  This 10th day of February, 2023.

/s/ Sydney R. Strickland
Sydney R. Strickland
Georgia Bar No. 418591
Attorney for Aaron Green

STRICKLAND WEBSTER, LLC
830 Glenwood Ave SE
Suite 510 #203
Atlanta, GA 30316
Telephone: (404) 590-7967
Facsimile:  (404) 393-3617
sydney@stricklandwebster.com